| | |
|---|---|
| CRST DEDICATED SERVICES, INC. ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **ORDER** |
| ) | |
| INGERSOLL-RAND COMPANY and its ) | |
| affiliate and wholly owned subsidiary, ) | |
| CLUB CAR a/k/a CLUB CAR, LLC a/k/a ) | |
| CLUB CAR, INC., ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff CRST Dedicated Services, Inc.'s Partial Motion to dismiss Defendants Ingersoll-Rand Company and its affiliate and wholly owned subsidiary, Club Car a/k/a Club Car, LLC a/k/a Club Car, Inc.'s counterclaims of trespass to chattel and a violation of North Carolina's Unfair and Deceptive Trade Practices Act made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. No. 15]. Having been fully briefed and considered, the Plaintiff's motion is now ripe for disposition. For the reasons discussed below, Plaintiff's Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

Plaintiff CRST Dedicated Services, Inc. (hereinafter, "CRST"), a transportation company, and Defendants Ingersoll-Rand Co. and Club Car (hereinafter, collectively, "Club Car"), entered into a contract on July 1, 2013. [Doc. No. 12] ¶ 8 (2015 Def.'s Answer to Pl.'s Compl.). Under the contract, CRST was to provide dedicated transportation services to Club Car in the form of shipment and delivery of Club Car's products to Club Car's customers. [Doc. No. 17] ¶ 5 (2015

Def. Countercl.). While performing the contract, CRST managed and operated equipment leased or owned by Club Car. [Doc. No. 12] ¶ 6 (2015 Def. Countercl.). That equipment included tractors and trailers bearing the Club Car brand. [Doc. No. 12] ¶ 6 (2015 Def. Countercl.). The use of that equipment was governed by the Trailer Interchange Agreement (the "Contract"). [Doc. No. 12] ¶ 7 (2015 Def. Countercl.). The Contract was performed between July 1, 2013 and August 29, 2014. [Doc. No. 1] ¶ 10 (2015 Compl.).

Disagreements between the parties began soon after the Contract was formed. [Doc. No. 12] ¶ 8 (2015 Def. Countercl.). On July 7, 2014, Club Car sent a notice to CRST of "Club Car's intent to terminate the Contract effective November 4, 2014, due to numerous issues with CRST's performance of the [Contract]." [Doc. No. 12] ¶ 12 (2015 Def. Countercl.). On August 20, 2014, Club Car sent another notice of termination letter advising CRST that the Contract would be terminated effective 30 days later, two months before the previous termination date, because of numerous "material breaches" by CRST. [Doc. No. 12] ¶ 13 (2015 Def. Countercl.). At the time of the second termination letter, CRST was in the process of providing transportation services for Club Car. [Doc. No. 12] ¶ 12 (2015 Def.'s Answer to Pl.'s Compl.).

On August 27, 2014, "Club Car provided CRST with formal written notice of Club Car's intent to exercise its right to set-off any additional amounts owed to CRST in proportion to damages incurred by Club Car due to CRST's ongoing breaches and violations" of the Contract, "including damages to Club Car trailers while in CRST's possession." [Doc. No. 12] ¶ 14 (2015 Def. Countercl.). CRST unilaterally halted transportation of Club Car's products on August 28, 2014. [Doc. No. 12] ¶ 15 (2015 Def. Countercl.). "CRST instructed its drivers who were carrying outbound loads for Club Car to discontinue their respective routes and to move their tractors and trailers to locations undisclosed to Club Car and not to deliver their respective loads." [Doc. No.

12] ¶ 15 (2015 Def. Countercl.). As a result, "Club Car requested that CRST instruct its drivers to complete their deliveries as required by the [Contract] and to expeditiously return the Club Car trailers and equipment." [Doc. No. 12] ¶ 16 (2015 Def. Countercl.). Club Car claims that CRST "wrongfully detain[ed] the vehicles and cargo, [ ] instruct[ed] its drivers not to complete scheduled routes, and commit[ed] an unauthorized, unlawful interference[,] intermeddling and dispossession of Club Car's equipment and cargo[.]" [Doc. No. 12] ¶ 35 (2015 Def. Countercl.). Club Car contends that those unauthorized actions, as well as CRST's act of removing Club Car's equipment and products from the road, state a claim of trespass to chattel under North Carolina law. [Doc. No. 12] ¶¶ 32-36 (2015 Def. Countercl.).

CRST agreed to return its drivers to the road if Club Car accepted CRST's terms for payment and transition. [Doc. No. 12] ¶ 18 (2015 Def. Countercl.). By way of email, on August 28, 2014, the parties came to a new agreement[1] for handling of the termination and transition of services, when Club Car accepted CRST's terms. [Doc. No. 12] ¶ 19 (2015 Def. Countercl.). On September 2, 2014, Club Car wired $931,437.67 to CRST. [Doc. No. 12] p. 4 ¶ 17 (2015 Def.'s Answer to Pl.'s Compl.).[2] Club Car claims that it was unfairly compelled to negotiate with CRST and accept CRST's terms because CRST detained Club Car's equipment and products during negotiations. [Doc. No. 12] ¶¶ 38 (2015 Def. Countercl.). Club Car alleges it was compelled to accept the terms of CRST in order to achieve timely delivery, as promised, to its customers and to complete it transition to a new transportation services provider, and that this unfair compulsion amounted to CRST's violation of the North Carolina Unfair and Deceptive Trade Practices Act. [Doc. No. 12] ¶¶ 17, 37-41 (2015 Def. Countercl.).

---

[1] Subsequently, Club Car has denied that this agreement is enforceable because of the circumstances under which it was negotiated. [Doc. No. 12] p. 3 ¶ 17 (2015 Def.'s Answer to Pl.'s Compl.).
[2] There are two ¶ 17's in Defendant's Answer to Plaintiff's Complaint. This citation refers to the second ¶ 17.

CRST initiated this law suit on July 2, 2015 alleging that Club Car did not pay the full outstanding dollar amount it owed CRST, and has made breach of contract and quantum meruit claims for the $107,693.00 that Club Car allegedly still allegedly owes CRST. [Doc. No. 1] at ¶¶ 22, 28-35, 36-41 (2015 Compl.). Club Car answered CRST's complaint and filed the counterclaims that are the subject of this motion on September 2, 2015. [Doc. No. 12] (2015 Def.'s Answer and Countercl.). CRST replied to Club Car's counterclaims on September 21, 2015, and, on October 9, 2015, filed a partial motion to dismiss Club Car's counterclaims of trespass to chattel and violation of North Carolina's Unfair and Deceptive Trade Practices Act (the "NCUDTPA"). [Doc. No. 12] (2015 Def.'s Answer and Countercl.), [Doc. No. 15] (Pl.'s Partial Mot. to Dismiss). Club Car filed its response to CRST's partial motion to dismiss on October 26, 2015. [Doc. No. 17] (2015 Def.'s Resp. to Pl.'s Partial Mot. to Dismiss Def.'s Countercl.). CRST chose not to reply. [Doc. No. 20] (2015 Pl.'s Notice of Intent not to Reply).

## II. DISCUSSION

### A. Standard of Review

When reviewing a Rule 12(b)(6) motion to dismiss, this Court must examine the legal sufficiency of the complaint; it may not resolve factual disputes or weigh the claims and defenses against one another. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Rather, the court must accept as true all of the well-plead factual allegations contained in the complaint. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court may, however, determine whether the facts alleged are sufficient, when taken at face-value, to reasonably imply liability on the part of the defendant. In order to survive such a motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, the "complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows for the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

However, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. In order to assert a claim for relief, the complaint must allege facts that imply more than a "sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability[.]" *Id.* at 678 (quoting *Twombly,* 550 U.S. at 557). Critically, "'[t]he presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal . . . when the facts alleged in the complaint' cannot support the legal conclusion" alleged or the relief sought. *See Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001)). "Legal inferences drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments are not part of the [court's] consideration." *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 Fed. App'x 820, 827 (4th Cir. 2010); *see also E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

B. Defendants' Counterclaims are Preempted by the Federal Aviation Administration Authorization Act

At issue is whether the Federal Aviation Administration Authorization Act ("FAAAA") preempts two of the Defendant's state law counterclaims. Preemption can be either express or implied, *Cippollone v. Liggett Grp.*, 505 U.S. 504, 516 (1992), but the question of whether a state action is preempted by federal law in all preemption cases "is one of congressional intent." *Ingersoll-Rand Co. v. McClendon*, 493 U.S. 133, 137-38 (1990). The purpose of the FAAAA is to deregulate trucking in order to provide "maximum reliance on competitive market forces." *Rowe*

*v. N.H. Transp. Ass'n*, 552 U.S. 364, 367 (2008) (implying that the motivations behind the Airline

Deregulation Act and its preemption provision are the same as the motivations behind the FAAAA

and its preemption provision because of similar congressional actions and the almost identical

language of the preemption provisions) (internal quotes omitted). Congress placed an express

preemption clause into the FAAAA. 49 U.S.C. § 14501(c)(1). That clause provides, in relevant

part,

> a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision[3] having the force and effect of law related to a price, route, or service of any motor carrier… with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). CRST claims that this provision expressly preempts Club Car's trespass

to chattels claim and its claim under the NCUDTPA.

Where there is an express intent to preempt, as exists here, a court's job is made easier.

*Ingersoll-Rand Co. v. McClendon*, 492 U.S. 133, 138 (1990) ("Where… Congress has expressly

included a broadly worded preemption provision in a comprehensive statute… our task of

discerning congressional intent is considerably simplified."). Additionally, this Court's job in

interpreting the preemption provision in the FAAAA and applying it to this case is made easier

because the provision is almost identical[4] to the preemption provision in the Airline Deregulation

Act ("ADA"), and courts have interpreted the preemption clauses of the ADA and FAAAA in the

same manner. *Rowe v. N.H. Transp. Ass'n*, 552 U.S. 364, 370 (2008). ("[W]e follow *Morales*[, a

United States Supreme Court case analyzing the preemption provision of the Airline Deregulation

---

[3] Enforcement through private lawsuits counts as "state law, regulation, or other provisions" for purposes of the FAAAA. *See In re EVIC Class Action Litig.*, Nos. M-21-84 (RMB), MDL-1339, 00-CIV-3811 (RMB), 02-CIV-2703 (RMB), 2002 WL 1766554 at *8 (S.D.N.Y. July 31, 2002).

[4] The preemption provision in the ADA is as follows, "[e]xcept as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 states may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier…." 49 U.S.C. § 41713(b).

Act,] in interpreting similar language in the [Federal Aviation Administration Authorization Act] before us here."). Therefore, cases interpreting the ADA preemption provision are instructive in the interpretation of the FAAAA preemption provision. *Rowe v. N.H. Transp. Ass'n*, 552 U.S. 364, 370 (2008) (using *Morales*, an ADA preemption case, to interpret the FAAAA preemption provision); *In re EVIC Class Action Litig.*, Nos. M-21-84 (RMB), MDL-1339, 00-CIV-3811 (RMB), 02-CIV-2703 (RMB), 2002 WL 1766554 at *7 (S.D.N.Y. July 31, 2002) ("The FAAAA's preemption provisions show[] that Congress intended for such provisions to be applied in an identical manner as the preemption provision of the [ADA]…. Thus cases interpreting the [ADA's] preemption clause are instructive in interpreting [the preemption clause] of the FAAAA." (internal quotes omitted)).

Congress wrote the ADA preemption clause because it determined that "maximum reliance on competitive market forces would best further efficacy, innovation, and low prices as well as variety and quality of air transportation services." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1990). Courts have inferred that this was also the purpose behind the congressional decision to write an almost identical provision into the FAAAA. *In re EVIC Class Action Litig.*, 2002 WL 1766554, at *7 (S.D.N.Y. July 31, 2002); *see Rowe v. N.H. Transp. Ass'n*, 552 U.S. 364, 367-68 (2008) (explaining the motivation behind the ADA preemption provision and then stating that Congress sought the same things in deregulating trucking under the FAAAA). Both provisions were enacted "[t]o ensure that the states would not undo federal deregulation with regulation of their own. *In re Air Cargo Shipping Serv. Antitrust Litig.*, 2008 WL 5958061, at *16 (E.D.N.Y. Sept. 26, 2008). Congress was "[c]oncerned that state regulation impeded the free flow of trade, traffic and transportation of interstate commerce [and] resolved to displace certain aspects of the State regulatory process." *Dan's City Used Cars, Inc. v. Pelkey*, 133 S.Ct. 1769, 1780 (2013)

(internal quotes omitted).

Based on the language and purpose of the ADA and FAAAA's preemption provisions, both have been interpreted broadly. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (holding that the ADA preemption clause expresses "a broad preemptive purpose"); *Dilts v. Penske*, 769 F.3d 637, 643 (9th Cir. 2014) ("Statutory 'related to' test is 'deliberately expansive' and 'conspicuous for its breadth.'"). The key phrase in ADA and FAAAA preemption cases is "related to." *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). "Related to" has been defined as "to stand in some relation, to have bearing or concern, to pertain, refer, to bring into association with or connection with." *Deerskin Trading Post v. United Parcel Serv. of Am., Inc.*, 972 F.Supp. 665, 668 (N.D. Ga. 1997). "Related to" expresses a broad preemptive purpose. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992) (stating that a preemption provision with the key phrase "relate to" has "a broad scope… an expansive sweep… [is] deliberately expansive… and is conspicuous for its breadth"). A state law, regulation, or other provision may relate to, and be preempted by, the FAAAA "even if the law is not specifically designed to affect such plans or the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 493 U.S. 133, 139 (1990). "To determine whether a claim has a connection with or a reference to [a carrier's] prices, routes or services [a court] must look at the facts underlying the specific claim." *Smith v. Comair*, 154 F.3d 254, 259 (4th Cir. 1998). State actions that relate to "prices, routes or services in too tenuous, remote, or peripheral a manner" will not be preempted by the FAAAA. *Smith v. Comair*, 134 F.3d 254, 257 (4th Cir. 1998) (internal quotes omitted).

In FAAAA preemption cases, for a claim or state action to be preempted, the claim or state

action must[5] be made "with respect to transportation[6] of property." *Dan's City Used Cars Inc. v. Pelkey*, 133 S.Ct. 1769, 1775 (2013). This requirement restricts the preemption ability of the FAAAA. *Dan's City Used Cars, Inc. v. Pelkey*, 133 S.Ct. 1769, 1778 (2013).

On the specific facts presented, the Court finds that the claims at issue are "related to" the price and service of a motor carrier with respect to the transportation of property, and therefore, are preempted by 49 U.S.C. § 14501(c)(1). Defendants' argument that these claims are unrelated to a price or service is unpersuasive. In this case, Club Car's claims are based on CRST's unilateral decision to halt its ongoing transportation *services* to renegotiate the *price* that Club Car would pay for those services when the halted drivers resumed their routes. Further, Club Car's counterclaims clearly satisfy the additional requirement that, to be preempted, a claim or state action must also respect the transportation of property. Club Car's trespass to chattel claim concerns the halting of the transportation of Club Car's property (both merchandise and trailer interchange agreement equipment) and Club Car's unfair and deceptive trade practices claim relates to the negotiation of prices for the services of transporting property previously rendered by CRST and future transportation of property services that CRST would render if Club Car accepted its terms.

Under these facts, the relationship of the counterclaims to a price or service is clear, and no persuasive effort has been undertaken by Club Car to distinguish CRST's strong-armed renegotiation tactic from those negotiations and market forces that Congress intended to deregulate when it passed the FAAAA. Were the Court to allow Club Car's claims to proceed, the State of

---

[5] The ADA preemption clause does not have this requirement. It does not include the "with respect to the transportation of property" language. 49 U.S.C. § 41713(b).

[6] "Title 49 defines 'transportation,' in relevant part, as 'services related to th[e] movement' of property, 'including arranging for, receipt, delivery, elevation, transfer in transit,… storage, handling, packing, unpacking, and interchange of… property.'" *Dan's City Used Cars, Inc. v. Pelkey*, 133 S.Ct. 1769, 1779 (2013).

North Carolina would effectively be permitted to regulate the way CRST negotiates its prices and services in an extra-contractual manner. Additionally, such claims would displace a Congressional design that allows the market to weed-out poor negotiation and bargaining techniques.[7] Indeed, Club Car seeks to use the authority of North Carolina regulatory law to force CRST, and others like it, to choose whether to continue providing services in a relationship that is no longer commercially beneficial, or attempt to renegotiate such relationship while facing the possibility of incurring extra-contractual liability imposed by state law. Congress made clear its decision in this context, and this Court is obliged to enforce it.

"Our task in all preemption cases is to enforce the clear and manifest purpose of Congress," *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 112 (1992). In this case, that requires preemption of Club Car's claims of trespass to chattel and its claim under the NCUDTPA. However, to be clear, the FAAAA's preemption clause will not preempt all trespass to chattel and NCUDTPA claims against motor carriers. Some claims may be related to price, routes, or services "in too tenuous, remote, or peripheral [a] manner" for the claim to be preempted. *Rowe v. N.H. Transp. Ass'n*, 552 U.S. 364, 370 (2008); *Smith v. Comair*, 154 F.3d 254, 257 (4th Cir. 1998). Additionally, Club Car still has viable counterclaims for breach of the parties' transportation agreement and breach of the trailer interchange agreement, and, likewise, other claimants will have the ability to recover on contractual claims. *See American Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995) (stating that the ADA's preemption clause does not shelter airlines from suits "seeking recovery solely for the airline's alleged breach of its own self-imposed undertakings" or voluntary

---

[7] The Court finds it appropriate to note that it does not speak to the merits of Club Car's counterclaims absent the applicability of preemption. CRST's actions may or may not otherwise violate North Carolina law, and the Court's decision should not be read as either an endorsement or disapproval of its actions. Rather, the Court merely holds that Congress intended to relieve parties like CRST and Club Car from the burden of complying with a myriad of state and federal regulation in the negotiation of their prices and services. If CRST's negotiation tack goes too far in this case, then Congress has made the judgment that the free market and the law of contract, not state or federal regulation, will dispose of it appropriately.

contractual arrangements); *see also Rowe v. N.H. Transp. Ass'n*, 552 U.S. 364, 370 (2008).

Because the Court dismisses the claims at issue for the reasons discussed above, it need not address

the parties remaining arguments.

**III.    DECRETAL**

**IT IS, THEREFORE, ORDERED THAT** the Plaintiff's Partial Motion to Dismiss (Doc.

No. 15) is hereby **GRANTED**.

**SO ORDERED.**

Signed: July 6, 2016

Richard L. Voorhees
United States District Judge